THIS OPINION IS A
PRECEDENT OF THE T.T.A.B.

Mailed:  March 4, 2010

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————————

**Trademark Trial and Appeal Board**

————————

In re Wm. B. Coleman Co., Inc.

————————

Serial No. 77067861

————————

Raymond G. Areaux of Carver, Darden, Koretzky, Tessier, Finn, et al. for Wm. B. Coleman Co., Inc.

Mark Sparacino, Trademark Examining Attorney, Law Office 103 (Michael Hamilton, Managing Attorney).

————————

Before Quinn, Bucher and Kuhlke, Administrative Trademark Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

Wm. B. Coleman Co., Inc. (applicant), on December 19, 2006, filed an application to register ELECTRIC CANDLE COMPANY in standard characters for goods ultimately identified as "light bulbs; lighting accessories, namely, candle sleeves; lighting fixtures" in International Class 11.  The application was originally filed under Trademark Act Section 1(b), 15 U.S.C. §1051(b).  However, during prosecution of the application, applicant filed an amendment to allege use and a claim of acquired

distinctiveness under Section 2(f), 15 U.S.C. §1052(f), asserting February 1, 2002 as the date of first use and first use in commerce. Applicant alleged that the mark has become distinctive of the goods based on the declaration of applicant's substantially exclusive and continuous use in commerce for at least the five years immediately preceding the date of the statement. Thereafter, applicant filed a request to amend its application to seek registration on the Supplemental Register.

As is evident from the above-noted prosecution history, the examining attorney initially refused registration under Section 2(e)(1) on the ground that applicant's mark is merely descriptive. Upon applicant's amendment to seek registration under Section 2(f), the examining attorney maintained the refusal based on mere descriptiveness and also refused registration on the ground that the proposed mark is generic. Upon applicant's amendment to the Supplemental Register, the examining attorney refused registration under Section 23 of the Trademark Act, 15 U.S.C. § 1091, on the ground that applicant's proposed mark is generic and, as such, unregistrable. Trademark Manual of Examining Procedure ("TMEP") §§815.04 and 1209.02(a)(i) (6th ed. 2009) (when an applicant amends its application to the Supplemental

Register in response to a Section 2(e)(1) descriptiveness refusal, if the examining attorney determines that the designation is a generic name for the applicant's goods, the statutory basis for such a refusal is Section 23 of the Trademark Act). See also In re Controls Corp. of America, 46 USPQ2d 1308, 1309 n. 2 (TTAB 1998).

Applicant appealed the refusal to register its proposed mark ELECTRIC CANDLE COMPANY on the Supplemental Register. Thus, the only issue on appeal is whether applicant's proposed mark ELECTRIC CANDLE COMPANY is generic for "light bulbs; lighting accessories namely, candle sleeves; lighting fixtures" and, therefore, incapable of registration on the Supplemental Register.

When a proposed mark is refused registration as generic, the examining attorney has the burden of proving genericness by "clear evidence" thereof. See In re Hotels.com, 573 F.3d 1300, 91 USPQ2d 1532, 1533 (Fed. Cir. 2009); In re Merrill Lynch, Pierce, Fenner & Smith, Inc., 828 F.2d 1567, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987); and In re Gould Paper Corp., 834 F.2d 1017, 5 USPQ2d 1110, 1111 (Fed. Cir. 1987).

The critical issue is to determine whether the record shows that members of the relevant public primarily use or understand the term sought to be registered to refer to the

3

category or class of goods or services in question.
H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs,
Inc., 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986);
In re Women's Publishing Co. Inc., 23 USPQ2d 1876, 1877
(TTAB 1992).  Making this determination "involves a two-
step inquiry:  First, what is the genus of goods or
services at issue?  Second, is the term sought to be
registered ... understood by the relevant public primarily
to refer to that genus of goods or services?"  Ginn, 228
USPQ at 530.  Evidence of the public's understanding of a
term may be obtained from any competent source, including
testimony, surveys, dictionaries, trade journals,
newspapers and other publications.  See Merrill Lynch,
supra, 4 USPQ2d at 1143 (Fed. Cir. 1987), and In re
Northland Aluminum Products, Inc., 777 F.2d 1556, 227 USPQ
961, 963 (Fed. Cir. 1985).

Finally, the evidentiary burden is different depending
on the type of mark an applicant seeks to register.  Where
marks are compound terms, the examining attorney may
establish that the term is generic by producing evidence
that each of the constituent words is generic, and that the
separate words retain their generic significance when
joined to form a compound that has "a meaning identical to
the meaning common usage would ascribe to those words as a

compound." In re Gould Paper Corp., 834 F.2d 1017, 5 USPQ2d 1110, 1111-1112 (Fed. Cir. 1987) (SCREENWIPE held generic as applied to premoistened antistatic cloths for cleaning computer and television screens). See also TMEP §1209.01(c)(i). Where marks are more in the nature of a phrase, the United States Patent and Trademark Office ("USPTO") must provide evidence of the meaning of the composite mark as a whole. In re American Fertility Society, 188 F.3d 1341, 51 USPQ2d 1832, 1837 (Fed. Cir. 1999) (SOCIETY FOR REPRODUCTIVE MEDICINE not generic for association services in the field of reproductive medicine because where the mark is a phrase evidence that each separate term is generic is not sufficient). See also In re Dial-A-Mattress Operating Corp., 240 F.3d 1341, 57 USPQ2d 1807, 1810 (Fed. Cir. 2001) (1-888-M-A-T-R-E-S-S not generic for telephone shop-at-home retail services in the field of mattresses because it "bears closer conceptual resemblance to a phrase than a compound word" and there is no evidence of record that the mark as a whole is generic); and In re Active Ankle Systems Inc., 83 USPQ2d 1532 (TTAB 2007) (DORSAL NIGHT SPLINT found generic for orthopedic splints for the foot and ankle based on record that included third-party use of the entire phrase).

The examining attorney's position is that the "genus at issue is the source or provider of 'electric candle' goods [and t]he relevant public understands that ELECTRIC CANDLE COMPANY primarily refers to the source or provider of electric candle goods."  Br. pp. 3-4.  Further, the examining attorney contends that:

> "ELECTRIC CANDLE COMPANY" would not be recognized by consumers as a trademark, but merely as the generic term for the source of the goods. Therefore, the mark is generic because the relevant public would clearly understand that the addition of the generic term for a business entity, "company," to the generic term "electric candle," refers to a provider of "electric candles" and "electric candle" goods. Accordingly, the proposed mark ELECTRIC CANDLE COMPANY cannot be registered on the supplemental register because it is a generic term for a provider of "electric candle" goods.

Br. p. 6.

In support of his position, the examining attorney relies on excerpts from applicant's website in which the term "electric candle" is used as a generic term for the goods that it sells.  See, e.g., www.electric-candle.com ("Our electric candle simply needs to be seen to be believed."  "How to install the electric candle." (December 13, 2008 office action)).  In addition, the record includes excerpts from several third-party websites that use "electric candle" as the name of a type of a lighting fixture.  See, e.g., www.sconce-lighting.net ("Besides the

6

traditional sconces with candles inside there are also electric candle bulbs and wax sleeves"); www.carnationcandles.com ("We also carry a line of accessories for your electric candle lamps..."); and www.nationalartcraft.com ("Electric Candle Kit contains everything you need to create a traditional style electric candle").

Below are pictures and descriptions of electric candles as shown on some of the third-party websites of record.



**Electric Candle** www.batterysavers.com



**ELECTRIC CANDLE**

**DESCRIPTION**

When you want the warm glow of candles without worrying about safety or a mess, you need an **electric candle**. For your next party or religious event, or just to have around the house, an **electric candle** is the best alternative to burning regular wax candles. When you use an **electric candle**, you don't have to worry about children burning themselves with the flame or hot wax. An **electric candle** eliminates any mess you might have from dripping wax. Using a battery powered **electric candle** is safe, practical, and fun. When you are considering candles for your next event, use candle.com to help you find the perfect assortment of **electric candle** to ensure safety, no messes, and fun.

http://candle.com



Pack of 2 Clear Glow Silicone Electric Candle Lamp
Replacement Bulbs #6201-17
Other products by Darice

Price: $1.99

Availability: In Stock. Ships from and sold by Merchant Overstock.

www.amazon.com



www.carnationcandles.com



http://shop.moravianbookshop.com



www.smartlitech.com

The examining attorney also points out that the USPTO "already recognizes 'electric candles' as a generic term because 'electric candles' is an entry in the USPTO's Trademark Manual of Acceptable Identifications of Goods and Services." Br. p. 5.

Finally, the examining attorney submitted the following dictionary definition:

> Company:  an organization that produces or sells goods or services in order to make a profit. Cambridge Dictionary of American English (2008), retrieved from dictionary.cambridge.org

The examining attorney analyzed the evidence under both the Gould and American Fertility standards.  The examining attorney argues that the Gould standard applies because "electric candle" is a unitary generic term and the addition of the non-source identifying term "company" to a generic term "electric candle" creates a compound term. Drawing on the analysis in In re Eddie Z's Blinds and Drapery, Inc., 74 USPQ2d 1037 (TTAB 2005) (registrability of BLINDSANDDRAPERY.COM), the examining attorney argues that the Board "in that case determined that Gould applied and that the compound term comprised of the generic term 'blinds and drapery' coupled with non-source identifying term '.com,' was generic [and] the burden of genericness was met by providing evidence of the genericness of 'blinds and drapery' and '.com' separately."  Br. p. 10.

In the alternative, the examining attorney argues that the record establishes that ELECTRIC CANDLE COMPANY is generic under the American Fertility standard.  Relying on

In re Cell Therapeutics Inc., 67 USPQ2d 1795 (TTAB 2003),

the examining attorney contends that:

> Because "company" has no source indicating
> capacity, the issue is whether the term "electric
> candle" is a generic term for applicant's goods
> [and] the evidence clearly shows that "electric
> candle" is a generic term.

Br. pp. 10-11.

In traversing the refusal, applicant argues that its

proposed mark is a phrase not a compound term and,

therefore, the Gould standard is inapplicable.

Specifically, quoting American Fertility, applicant argues:

> [The examining attorney's] analysis is directly
> at odds with the pertinent Federal Circuit
> authority, which has expressly limited the
> holding of Gould to compound terms form[ed] by
> the union of words:
>
>> Gould is limited, on its facts, language, and
>> holding to compound terms formed by the union
>> of words.  It is legally erroneous to attempt
>> to apply the [Gould approach] to phrases
>> consisting of multiple terms, which are not
>> "joined" in any sense other than appearing as
>> a phrase.  [citation omitted]
>
> As American Fertility plainly indicates, the only
> marks for which Gould applies are "compound terms
> formed by the union of words."  Marks that are
> "phrases consisting of multiple terms:  must be
> analyzed under the American Fertility rule.  In
> view of this clear directive from the Federal
> Circuit, the Gould analysis employed in the
> Second Office Action, Third Office Action, and
> Fourth Office Action cannot support a genericness
> refusal of Applicant's ELECTRIC CANDLE COMPANY
> mark.  Simply stated, Applicant's ELECTRIC CANDLE
> COMPANY mark is not a "compound term formed by
> the union of words," and therefore Gould is

> inapplicable...in view of the American Fertility
> holding that SOCIETY FOR REPRODUCTIVE MEDICINE is
> a phrase and the Dial-A-Mattress holding that 1-
> 888-M-A-T-R-E-S-S "bears closer conceptual
> resemblance to a phrase than a compound word," it
> is incomprehensible that Applicant's mark
> ELECTRIC CANDLE COMPANY can be considered
> anything other than a phrase.

Br. pp. 3-5.

Applying the American Fertility standard, applicant argues that the record does not support a genericness finding because there are no examples of use of the phrase "ELECTRIC CANDLE COMPANY" other than on applicant's own website.

We begin by finding that the genus of goods at issue in this case is adequately defined by applicant's identification of goods, namely, "light bulbs; lighting accessories, namely, candle sleeves; lighting fixtures."[1] Magic Wand Inc. v. RDB Inc., 940 F.2d 638, 19 USPQ2d 1551, 1552 (Fed. Cir. 1991) ("[A] proper genericness inquiry focuses on the description of [goods or] services set forth in the [application or] certificate of registration.") We further find that this identification encompasses "electric candles" and, as such, the genus includes "electric candles." Indeed, these are the goods sold by applicant as

---

[1] In this regard, we do not adopt the examining attorney's description of the genus as being the source or provider of the goods.

shown below in the excerpt from applicant's website

submitted by the examining attorney:

> This part is used to keep the electric candle
> from moving during shipment and may be discarded
> ... Electric Candles are Safe and Convenient

www.electric-candle.com.  See In re Web Communications, 49

USPQ2d 1478, 1479 (TTAB 1998).  See also In re Stereotaxis

Inc., 429 F.3d 1039, 77 USPQ2d 1087, 1089 (Fed. Cir. 2005),

quoting, Application of Richardson Ink Co., 511 F.2d 559,

185 USPQ 46, 48 (CCPA 1975) ("Our predecessor court...has

stated that registration should be refused if the mark is

descriptive of any of the goods for which registration is

sought"); In re Analog Devices, Inc., 6 USPQ2d 1808, 1810

(TTAB 1988), aff'd, 871 F.2d 1097, 10 USPQ2d 1879 (Fed.

Cir. 1989) (unpublished) (registration is properly refused

if the subject matter for registration is generic of any

one of the goods for which registration is sought).

Turning to the second inquiry, the public's

understanding of the term, the relevant public consists of

the ordinary consumer interested in purchasing light bulbs,

accessories and fixtures, including electric candles.

As noted above, the evidentiary burden of establishing

that a term is generic rests with the USPTO and the showing

must be based on clear evidence.  Merrill Lynch, 4 USPQ2d

at 1143.  Based on this record, we find that there is clear

13

evidence to support a finding that the relevant public, when they consider ELECTRIC CANDLE COMPANY in conjunction with the class of involved goods, would readily understand the term to identify a type of lighting fixture, namely, electric candles.

There can be no dispute that the term "electric candle" is the name of a type of lighting fixture.  The dispute centers on the effect of the addition of the word "company" to the term "electric candle" and the standard to be applied in analyzing the evidence.

We find the addition of the company designation in this case to have no significance and the record clearly establishes that the proposed mark is generic under either the Gould or American Fertility standards.  In addition, we find that even if the proposed mark as a whole is not the literal name of the goods, it is nonetheless incapable and, therefore, unregistrable on the Supplemental Register.

The record shows that "electric candle" is a unitary generic term.  The record also establishes that the term "company" is simply a designation for a type of entity without source-identifying capability.  Therefore, ELECTRIC CANDLE COMPANY is the combination of two generic terms joined to create a compound.  Eddie Z's Blinds, 74 USPQ2d at 1041-42.  Thus, Gould-type evidence showing the generic

14

nature of the two terms is sufficient to establish that the separate terms retain their generic significance when joined to form a compound that has "a meaning identical to the meaning common usage would ascribe to those words as a compound." Gould, 5 USPQ2d at 1111-12. The space between the generic terms "electric candle" and "company" does not disqualify this type of proposed mark from the Gould analysis. If anything, the terms appearing as they should in normal usage make it even more common. There is no logical basis upon which to conclude that Gould would have yielded a different result if the mark had been SCREEN WIPE rather than SCREENWIPE. Therefore, the Gould analysis applies under these circumstances.

Even if we were to treat ELECTRIC CANDLE or ELECTRIC CANDLE COMPANY as a phrase, and therefore subject to the American Fertility test, we find that the record in this case continues to support a finding that the proposed mark is generic. In American Fertility, the Court of Appeals for the Federal Circuit (Court) determined that the USPTO did not satisfy its "burden of showing that the phrase SOCIETY FOR REPRODUCTIVE MEDICINE is generic as applied to the Society's' services, namely, promoting the interests of the reproductive medicine profession." American Fertility, 51 USPQ2d at 1836. However, we do not believe that

American Fertility can be read such that an applicant could take a clearly generic term and add to it a non-source identifying word such as "company" and thereby create a trademark. This is true even in the absence of proof by the examining attorney that others have used "electric candle company."

In Cell Therapeutics, 67 USPQ2d at 1796-98, the Board found the phrase CELL THERAPEUTICS, INC. to be generic for pharmaceutical preparations and laboratory research and development services. The Board made this determination under the standard set forth in American Fertility, characterizing CELL THERAPEUTICS as a phrase and effectively eliminating the term INC. from the analysis. The Board noted that the applicant had not argued that the addition of INC. would obviate a finding that the proposed mark is generic and went on to cite prior cases where the Board had stated that INC. has no source-identifying capability.

Citing to several Board cases (In re Paint Products Co., 8 USPQ2d 1863 (TTAB 1988); In re Patent & Trademark Services Inc., 49 USPQ2d 1537 (TTAB 1998); In re Cell Therapeutics, Inc., 67 USPQ2d 1795), Professor McCarthy observes that:

Tacking a company organizational designation such as "Company," or "Inc." or "Partners" cannot transform a generic name into a protectable trademark.  Such company designations or their abbreviations are themselves generic and have no trademark significance.  Thus, one cannot append a generic company designation and magically transform a generic name for a product or service into a trademark, thereby giving a right to exclude others.  Such composites cannot be trademarks.  For example: "Color Television, Inc."; "Laptop Computers, Ltd."; or "Restaurant Food Services Company."  In an early case, the U.S. Supreme Court held that adding designations such as "Company," "Corp.," or "Inc." does not add any trademark significance to a designation which does not otherwise qualify as a trademark:

> The addition of the word "Company" only indicates that parties have formed an association or partnership to deal in such goods, either to produce or to sell them.  Thus parties united to produce or sell wine, or to raise cotton or grain, might style themselves "Wine Company," "Cotton Company," or "Grain Company," but by such description they would in no respect impair the equal right of others engaged in similar business to use similar designations, for the obvious reason that all persons have a right to deal in such articles, and to publish the fact to the world.  Names of such articles cannot be adopted as trade-marks, and be thereby appropriated to the exclusive right of any one; nor will the incorporation of a company in the name of an article of commerce, without other specification, create any exclusive right to the use of the name.

2 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition,</u> §12:39 (4th ed. updated 2010), quoting, Goodyear's Rubber Mfg. Co. v. Goodyear Rubber Co., 128 US 598 (1888).

Similar to Cell Therapeutics, the record here includes evidence of the two words used together.  Under this

17

analysis, ELECTRIC CANDLE is the phrase and we have evidence of generic use of this phrase. The record clearly establishes that an "electric candle" is a type of lighting fixture. Thus, the examples of use of "electric candle" in the record are sufficient to support the finding that applicant's proposed mark is generic. Unlike Cell Therapeutics, applicant in this case does include the non-source identifying term "company" in its analysis and argues that there is no evidence of record that includes the entire phrase ELECTRIC CANDLE COMPANY.

In Dial-A-Mattress the Court, in addressing the commercial need to use the subject term 1-888-M-A-T-R-E-S-S, stated that "given that telephone numbers consist of only seven numbers and typically can be used by only one entity at a time, a competitor of a business that has obtained a telephone number corresponding to a 'mattress' mnemonic for all practical purposes is already precluded from using and promoting the number. A rule precluding registerability merely shifts the race from the Trademark Office to the telephone company [and] its competitors have not been precluded from using mnemonic telephone numbers as marketing tools ... [and] remain free to use 'mattress' to describe their goods and services in formats other than the promotion of mnemonic telephone numbers consisting of the

term." Dial-A-Mattress, 57 USPQ2d at 1811. This is distinct from the Court's decision in 1-800-MATTRESS where the Court affirmed the Board's finding that mattress.com is generic, because the record demonstrated others' need to use the term. In re 1800Mattress.com IP, LLC, 586 F.3d 1359, 92 USPQ2d 1682 (Fed. Cir. 2009). While this record does not contain an example of another electric candle company referring to itself or its candles as "electric candle company" in offering its electric candles for sale, the need to use "electric candle company" is demonstrated by the evidence establishing that "electric candle" is used by others as the generic name of the goods, and an entity designation must be free for all to use in combination with the generic name of the products sold by the entity. Therefore, we hold that the designation "company" cannot transform the name of the goods for which registration is sought into a trademark.

Finally, though applicant contends ELECTRIC CANDLE COMPANY is not the term the relevant public would use to describe the genus, the relevant public would nonetheless understand ELECTRIC CANDLE COMPANY to refer to a company that offers electric candles, and public understanding is critical. 1800Mattress.com, 92 USPQ2d at 1685. It is, therefore, incapable of identifying source for electric

19

candles because it is a term a purchaser would understand and could use to refer to the type of company that sells electric candles, and must be left available for use by other such companies selling electric candles. Section 23 of the Trademark Act clearly prohibits registration of incapable matter on the Supplemental Register as set forth below:

> All marks capable of distinguishing applicant's goods or services and not registrable on the principal register herein provided,...which are in lawful use in commerce...may be registered on the supplemental register ...
>
> For the purposes of registration on the supplemental register, a mark may consist of any trademark, symbol, label, package, configuration of goods, name, word, slogan, phrase, surname, geographical name, numeral, device, any matter that as a whole is not functional, or any combination of any of the foregoing, but such mark must be capable of distinguishing the applicant's goods or services.

15 U.S.C. §1091(a) and (c).

As has been found in other cases, marks may not equate to the literal name of the goods or services for which registration is sought, but still be deemed to be "generic"[2]

---

[2] For example, matter that names a central focus of a service or the goods to be sold in connection with a service is regarded as "generic." See, e.g., 1800Mattress.com, 92 USPQ2d at 1684 (MATTRESS.COM generic and unregistrable under Section 23(c) for "online retail store services in the field of mattresses, beds, and bedding"); In re Hotels.com, L.P., 91 USPQ2d 1532, 1537 (HOTELS.COM generic for "providing information for others about temporary lodging; ...making reservations and bookings for temporary lodging for others by means of ...global computer

20

or otherwise incapable of attaining source significance and thus unregistrable, even on the Supplemental register. See In re Boston Beer Co. Ltd. Partnership, 47 USPQ2d 1914 (TTAB 1998), aff'd, 198 F.3d 1370, 53 USPQ2d 1056 (Fed. Cir. 1999) (The Best Beer in America, although not the generic name of the goods, is such a commonly used laudatory phrase that it is incapable of registration as a trademark); see also Paint Products, 8 USPQ2d at 1866 ("[P]urchasers encountering the words 'PAINT PRODUCTS CO.' on the goods for which registration is sought would view those words not as a trademark, but in their ordinary dictionary sense; a company that sells paint products [and] because it describes the goods of any company selling such products, the phase should remain available for applicant's competitors").

---

network"); In re Reed Elsevier Prop. Inc., 482 F.3d 1376, 82 USPQ2d 1378, 1380 (Fed. Cir. 2007) (LAWYERS.COM generic where lawyers were an "integral, if not the paramount, aspect" of the information services provided on the website); In re Eddie Z's Blinds and Drapery Inc., 74 USPQ2d at 1041-42 (generic terms for products equally generic for a retailer of such products); In re Candy Bouquet International Inc., 73 USPQ2d 1883, 1888 (TTAB 2004) ("[A] term which is generic for a particular class of goods is also deemed to be generic for the services of selling those goods."); In re Log Cabin Homes Ltd., 52 USPQ2d 1206, 1210 (TTAB 1999) (LOG CABIN HOMES generic for architectural design services directed to log cabins and retail outlets featuring log cabin construction kits); see also Clipper Cruise Line, Inc. v. Star Clippers, Inc., 952 F.2d 1046, 21 USPQ2d 1393, 1395 (8th Cir. 1992) (CLIPPER CRUISE LINE held generic for public sailing cruise services employing clipper-like ships).

In view of the above, the examining attorney has met his burden to establish that ELECTRIC CANDLE COMPANY is generic and incapable of registration for "light bulbs; lighting accessories, namely, candle sleeves; lighting fixtures."

**Decision**:  The refusal to register is affirmed.